**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-00623-CMA-CBS

ROXZANA SANTACRUZ,

    Plaintiff,

v.

STANDLEY AND ASSOCIATES, LLC and
GTF Services, LLC,

    Defendants.

---

**ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion") (Doc. # 25), and Defendants' Motion for Summary Judgment ("Defendants' Motion") (Doc. # 27.) In this case, Plaintiff Roxzana Santacruz ("Plaintiff") brings suit against Defendant Standley and Associates, LLC ("Defendant Standley") and GTF Services, LLC ("Defendant GTF") (collectively "Defendants") for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("FDCPA"). For the following reasons, Plaintiff's Motion is granted and Defendants' Motion is denied.

## I. **BACKGROUND**

**A.   FACTS**

The following facts are undisputed, unless otherwise noted. The Court will elaborate, as needed, in its analysis section.

A credit card account with Credit One Bank was opened in Plaintiff's name sometime prior to 2010, and went into default when the balance went unpaid. Defendant GTF purchased the debt on the account ("Debt"), on or about January 19, 2010, and placed the Debt with Defendant Standley, a single attorney law firm, on the same day. Although Defendants attempted to collect the Debt from Plaintiff, it turned out that she had not applied for the account and was, therefore, not responsible for the Debt. (*See* Doc. # 27-3.)

On January 21, 2010, Plaintiff telephoned Defendant Standley to dispute the Debt and spoke separately with Rochelle Williams and Brian Quintana, both employees of Defendant Standley. The statements made by Ms. Williams and Mr. Quintana during those telephone conversations are central to this case. Both conversations were recorded and partial transcripts are in the record.[1] (*See* Doc. ## 26-1, 42-2, 42-3, 42-4.) Although Ms. Williams originally told Plaintiff that her rights to dispute the Debt were "long gone," she later stated that Plaintiff could dispute the Debt in writing. (Doc. # 42-2

---

[1] The Court notes that the transcripts of both conversations provided by Plaintiff appear to be incomplete. (*See* Doc. ## 26-1, 26-4.) Although Defendants have provided a transcript of the full conversation between Plaintiff and Ms. Williams (Doc. # 42-2), the transcripts provided by Defendants of the conversation between Plaintiff and Mr. Quintana omit the most damaging statements. (Doc. ## 42-3, 42-4.)

2

at 4:13-17, 8:3-6.) During the conversation with Mr. Quintana, Plaintiff stated that she had filed a police report and that the Debt had subsequently been removed from her credit report. Mr. Quintana informed her that he had already re-reported the Debt to the credit reporting agencies. (Doc. # 42-3 at 1:15-2:8.) At some point in the conversation, Mr. Quintana told Plaintiff that he was "going to file a lawsuit against [her] real soon," that he possessed "affidavits from the bank . . . stating [it was Plaintiff's] account," and that he had "written off maybe [one] percent [of debts]." (Doc. # 26-1 at 6:7-19.) Defendant Standley did not, however, possess any such affidavits. (Doc. # 26-2 at 76:2-5.) After Plaintiff asked how long the Debt would remain on her credit report, Mr. Quintana replied that it would remain for seven years. (Doc. # 26-1 at 8:4-16.) Although the parties offer different interpretations of the meaning of these various statements, there is no dispute that these statements were made.

On March 23, 2010, Plaintiff was served with a state court complaint to collect the Debt. Plaintiff presented to Defendants a letter that she had received from Credit One Bank on March 19, 2010, which cleared her of responsibility for the Debt. Defendants then dismissed the state court complaint against Plaintiff.

**B.   PROCEDURAL HISTORY**

On March 17, 2010, Plaintiff filed a complaint against Defendants for violations of the FDCPA. Plaintiff amended the complaint on April 6, 2010. (Doc. ## 1, 7.) On November 30, 2010, Plaintiff filed a Partial Motion for Summary Judgment on the

issue of liability and Defendants filed a Motion for Summary Judgment.  (Doc. ## 25, 27.)  Responses and Replies were timely filed, and the motions are ripe for ruling.

## II.  **STANDARD OF REVIEW**

A motion for partial summary judgment is resolved under the same standard as a motion for summary judgment.  *See Franklin v. Thompson*, 981 F.2d 1168, 1169 (10th Cir. 1992).  Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Id.* at 670-71.  In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on

an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see also Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. <u>ANALYSIS</u>

**A.     FDCPA VIOLATIONS**

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debts collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote

consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."[2] 15 U.S.C. § 1692e.  Relevant to this case, § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt, § 1692e(5) prohibits the threat to take any action that cannot legally be taken or that is not intended to be taken, and  § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer ". . . to determine whether a debt collection practice is deceptive or misleading . . ., that practice must be viewed objectively from the perspective of the 'least sophisticated consumer.'"  *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 219 (N.D.N.Y. 2010); *Sowers v. Wakefield & Assoc.'s*, No. 09-cv-02873, 2010 WL 3872901, at *4 (D. Colo. Sept. 29, 2010) (unpublished).  This objective standard "ensure[s]  that the FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous."  *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993).  Liability under § 1692e arises even when the misrepresentation was neither knowing nor intentional.  *See Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175-76 (9th Cir. 2006); *Gearing v. Check Brokerage Corp.*, 233

---

[2]  Each Defendant admits that it is a "debt collector" as that term is defined by § 1692a(6).  (Doc. # 46 at 3-4.)

F.3d 469, 472 (7th Cir. 2000). The FDCPA "is a strict liability statute," and Plaintiff need only "show one violation of its provisions to be entitled to judgment in her favor." *Sowers*, 2010 WL 3872901, at *3 (citing *O'Connor v. Check Rite, Ltd.*, 973 F. Supp. 1010, 1020 (D. Colo. 1997)).

    1.    <u>The Alleged Misrepresentations</u>

Plaintiff alleges that Defendant Standley made numerous misrepresentations concerning the Debt, in violation of § 1692e. Specifically, Plaintiff alleges that Defendant Standley falsely represented that Defendant Standley was in possession of affidavits from Credit One Bank stating that the Debt was Plaintiff's, falsely represented that the Debt would remain on Plaintiff's credit report for seven years after it had been paid, and falsely represented that Plaintiff could not dispute the Debt. (*See* Doc. # 26 at 6.)

    a)    *Representations Regarding Defendant Being in Possession of Affidavits from Credit One Bank*

Mr. Quintana told Plaintiff that he possessed affidavits from Credit One Bank stating that the Debt belonged to her. Defendants admit that there were no such affidavits. (Doc. # 46 at 6.) Thus, there is no genuine issue of material fact as to whether this was a misrepresentation. Instead, Defendants blithely assert that this statement "was not material and is of no consequence in the matter." (Doc. # 46 at 13.)

Defendants, although acknowledging that the Tenth Circuit has not resolved the issue of whether a materiality requirement exists for section 1692e misrepresentations, argue that other circuits have inferred such a requirement. *See Donohue v. Quick*

*Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) (erroneously labeling combined sum of the late fees and interest as interest, rather than distinguishing between late fees and interest was false but non-material representation and, therefore, not actionable under §§ 1692e or 1692f); *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 758 (7th Cir. 2009) (labeling error that did not affect the total balance of the amount due was non-actionable, non-material statement).

Even assuming *arguendo* that § 1692e claims require the misrepresentation to be material, in contrast to the trivial misrepresentations at issue in *Donohue* and *Hahn*, the misrepresentation in the instant case would deceive or mislead the least sophisticated consumer.  Pressuring a customer to pay an account using non-existent evidence is a different kettle of fish than labeling errors that did not affect the total balance due.  Coupled with Mr. Quintana's statement that he had lost fewer than one percent of cases, the misrepresentation regarding his possession of affidavits from the bank was intended to give Plaintiff the impression that strong evidence was stacked against her and that disputing the Debt would be futile.  Thus, the Court finds that Mr. Quintana's statement to Plaintiff concerning the bank affidavits was a false representation that violated § 1692e.

                *b)*      *Representations Regarding Credit Reporting*

During Plaintiff's telephone conversation with Mr. Quintana, she asked how long the Debt would remain on her credit report.  Mr. Quintana replied, "[f]or the next seven years."  He explained that the seven years would begin:

> [A]s soon as I get my judgment, which will be – as soon as I file my lawsuit, once I get the judgment date, and then I run your credit – I run your social (inaudible) – and I start garnishing your wages for 25 percent. And once it's paid, from that date that it's paid, seven years from that date.

(Doc. # 26-1 at 8:10-16.)  Defendants do not dispute that this statement was made; rather, they contend that this statement does not include any false representations regarding credit reporting and that "any such representations were not and are not material."  (Doc. # 46 at 15-16.)  Although a party technically does not receive judgment as soon as they file a lawsuit, the Court interprets Mr. Quintana's statement as merely expressing confidence in the merits of his case.

Plaintiff also argues that Mr. Quintana's statement was false because it misrepresented the length of time that the delinquent account would remain on Plaintiff's credit report.  In relevant part, the Fair Credit Reporting Act ("FCRA") prohibits consumer reporting agencies from preparing any consumer report that contains "[a]ccounts placed for collection . . . which antedate the report by more than seven years."  15 U.S.C. § 1681c(4).  The seven year period begins "upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity . . .."  15 U.S.C. § 1681c(c)(1).  The import of this representation was that the Debt would remain on Plaintiff's credit report for seven years.  That Mr. Quintana's statement did not precisely track the language of the FCRA is understandable because the language of the FCRA is confusing and would be

9

incomprehensible to the average person.  Thus, the Court finds that this statement was substantially correct and, thus, was not a misrepresentation.

    c)  *Representations Regarding Disputed Debt*

During the conversation between Ms. Williams and Plaintiff, Ms. Williams initially told Plaintiff that her right to dispute the Debt was long gone.  However, Ms. Williams later said that she would send a validation of the Debt to Plaintiff and that Plaintiff could dispute the Debt in writing.  (Doc. # 42-2 at 6:7-8, 8:3-4.)  Although a consumer must dispute a debt in writing within a thirty-day period to trigger a debt validation process under section 1692g(b), there is no requirement that a consumer dispute a debt in writing if not seeking to trigger that process.  *See Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998) (concluding that section 1692e(8) "requires debt collectors to communicate the disputed status of a debt if the debt collector 'knows or should know' that the debt is disputed.").  Given the contradictions and ambiguous nature of Ms. Williams statements, a genuine issue of material fact exists as to whether Ms. Williams made any misrepresentations in violation of § 1692e.

  2.  <u>The Alleged Threat</u>

A debt collector may not "threat[en] to take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).  During the telephone conversation between Plaintiff and Mr. Quintana, Plaintiff asked Mr. Quintana if he was threatening her.  Mr. Quintana replied, "I'm not threatening you.  I'm making you a promise.  I'm going to file a lawsuit against you here real soon."  (Doc. # 26-1 at 6:5-9.)

Citing to several cases, Defendants contend that Mr. Quintana's statement does not constitute a threat under § 1692e(5).  *See Madonna v. Academy Collection Serv.*, No. 3:95CV00875, 1997 WL 530101, at *6-7 (D. Conn. Aug. 12, 1997) (unpublished) (finding that a creditor's statement that they "may choose to pursue legal action" was not a threat under the FDCPA); *Knowles v. Credit Bureau of Rochester*, No. 91-CV-14S, 1992 WL 131107, at *1-2 (W.D.N.Y. May 28, 1992) (unpublished) (finding that a debt collector's statement to a customer that "failure to pay will leave our client no choice but to consider legal action" was not a threat under the FDCPA).  Far from supporting Defendants' arguments, however, these cases reinforce this Court's determination that Mr. Quintana's "promise" constitutes a threat.  The statements at issue in *Madonna* and *Knowles* merely indicate that "legal action is an option available to the creditor." *Madonna*, 1997 WL 530101, at *7.  Mr. Quintana's "promise," on the other hand, suggests that legal action was not an option but a certainty.

Having found that Mr. Quintana's "promise" was a threat, the issue becomes whether Defendants intended to take that action.[3]  Defendants argue that intent must have existed because they eventually brought suit against Plaintiff.  The pertinent question, however, is whether Defendant Standley intended to take legal action against Plaintiff at the time the statement was made.  Although legal action was pursued against Plaintiff, suit was not filed until nearly two months after the threat of litigation.  A genuine

---

[3] Plaintiff argues that Mr. Quintana is not a lawyer and was therefore threatening to take an action that he could not legally take.  However, Mr. Quintana made the statement in a representative capacity.  Because there is no question that Defendant Standley, a law firm, could file a lawsuit, the threat could be legally taken.

11

issue of material fact exists as to whether Defendant Standley intended to take legal action against Plaintiff on January 21, 2010, the date on which Mr. Quintana promised Plaintiff that she would face legal action.

    3.    <u>Defendant GTF's Bona Fide Error Defense</u>

Defendant GTF argues that the FDCPA's bona fide error defense shields it from liability.[4] The Court need not resolve this question because Defendant GTF is vicariously liable under the FDCPA for the conduct of Defendant Standley. *See, e.g.*, *Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1095-96 (C. D. Cal. 2006) ("courts routinely hold debt collectors vicariously liable under the FDCPA for the conduct of their attorneys in collecting debts on their behalf."); *Martinez v. Albuquerque Collection Servs.*, 867 F. Supp. 1495, 1502 (D.N.M. 1994) (cases collected therein). Defendants do not raise a bona fide error defense with respect to Defendant Standley's actions and, thus, to the extent that Defendant Standley violated the FDCPA, Defendant GTF is vicariously liable regardless of whether the bona fide error defense would shield it from direct liability.

---

[4] Section 1692k of the FDCPA states:

> [a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k.

### B.     DAMAGES

The FDCPA provides for statutory damages of up to $1,000.00, reasonable attorney fees and costs, and actual damages. *See* 15 U.S.C. § 1692k. The issue in this case is whether there is sufficient evidence in the record to support Plaintiff's claim that she has suffered actual damages.

It is well settled that the FDCPA allows recovery of actual damages for personal humiliation, embarrassment, mental anguish, or emotional distress. *Chiverton v. Federal Financial Group, Inc.*, 399 F. Supp. 2d 96, 102 (D. Conn. 2005); *Milton v. Rosicki, Rosicki & Assoc.'s*, No. 02-cv-3052, 2007 WL 2262893, at *3 (E.D.N.Y. Aug. 3, 2007) (unpublished).

The preliminary question, whether a plaintiff's claims for emotional damages under the FDCPA are evaluated under the state tort law standard for intentional infliction of emotional distress ("IIED") or a more lenient standard, is one that has split various district courts.[5] *Costa v. National Action Financial Servs.*, 634 F. Supp. 2d 1069, 1077-78 (E.D. Cal. 2007) (finding that a plaintiff is required to establish the elements of a claim for IIED under state law to sustain an FDCPA claim for emotional distress). The majority of courts, however, have found that the FDCPA does not require a plaintiff to satisfy state tort law standards to prove emotional distress damages. *See*

---

[5] Courts in this district have also split on this issue in unpublished decisions. *Compare Burns v. Anderson*, No. 07-cv-1192, Doc. # 62 (D. Colo. Aug. 16, 2008) (order granting summary judgment) (Judge Daniel finding that plaintiff in FDCPA case must satisfy Colorado IIED standard) *with Marx v. General Revenue Corp.*, No. 08-cv-02243, 2010 U.S. Dist. LEXIS 35913, at *1 (D. Colo. Apr. 8, 2010) (Judge Matsch finding Colorado IIED standard inapplicable).

*Davis v. Creditors Interchange Receivable Management, LLC*, 585 F. Supp. 2d 968, 971 (N.D. Ohio 2008). In *Davis*, the court concluded that requiring plaintiffs to meet state tort law standards would "undermine, if not defeat entirely the Congressional objective of national uniformity in the statute's application and enforcement." *Id.* at 975. For the reasons expressed in *Davis*, this Court finds that state tort law standards do not apply to FDCPA claims, and Plaintiff need only prove that she has suffered actual damages caused by the Defendants' actions.

Plaintiff alleges that she suffered from panic attacks, anxiety, stress, insomnia, and hair loss as a result of Defendants' FDCPA violations. (Doc. # 27-5, 31:13-25, 34:5-8.) Defendants argue that Plaintiff has provided no corroborative evidence of causation between the FDCPA violations and her emotional distress, and that Plaintiff's deposition testimony, standing alone, is insufficient to prove emotional damages as a matter of law. *See Kittle v. Accredited Collection Agency Inc.*, No. 07-cv-01716, 2010 WL 2650479, at *2 (D. Colo. June 30, 2010) (unpublished) ("conclusory, general, and uncorroborated testimony . . . is not sufficient to support an award of damages for emotional distress.") However, Plaintiff may rely on her own testimony to establish emotional distress damages, provided that it is sufficiently detailed and does not rely on conclusory statements. See *Wantz v. Experian Information Solutions*, 386 F.3d 829, 834 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 56 (2007); *McCammon v. Bibler, Newman & Reynolds, P.A.*, 493 F. Supp. 2d 1166, 1171-72 (D. Colo. 2007) (noting that there is no authority for the proposition

that a plaintiff requires expert testimony on causation to recover actual damages in FDCPA claims).

Plaintiff's testimony at her deposition is sufficiently detailed to support an award of damages for emotional distress. Plaintiff testified that she visited Doctor Dena Litchfield, a family practice doctor, in February 2010, only a few weeks after her heated phone conversations with Mr. Quintana and Ms. Williams. Dr. Litchfield prescribed Klonpin and Effexor to treat Plaintiff's anxiety, stress, and difficulties sleeping. Plaintiff testified that she had not taken either of these medicines prior to Defendants' actions. (*See* Doc. # 27-5 at 32:17-33:6.) Moreover, the Court notes that Plaintiff's deposition testimony is not completely uncorroborated. Plaintiff has disclosed medical records confirming the treatment she sought after Defendants' efforts to collect the debt. (*See* Doc. # 44-1.)

The Court finds that Plaintiff's deposition testimony is sufficient to allow the issue of damages, including causation, to be decided by the jury.

**C.   STRICT LIABILITY**

Because the FDCPA "is a strict liability statute," Plaintiff need only prove one violation of its provisions to be entitled to judgment in her favor. *See Sowers*, 2010 WL 3872901, at *3. As the Court has determined, there exists no genuine issue of material fact that Defendants violated the FDCPA by informing Plaintiff that they possessed affidavits from Credit One Bank when, in reality, there were no such affidavits. Although questions of material fact exist as to Ms. Williams statements concerning Plaintiff's

ability to dispute the account and to Mr. Quintana's threat of litigation, the Court perceives no need to resolve these questions at trial because Defendants committed at least one violation of the FDCPA. If either party perceives such a need to resolve these outstanding issues of liability, they are directed to file supplemental briefing on the matter.

Accordingly, IT IS ORDERED THAT:

Plaintiff's Motion for Partial Summary Judgment on the issue of liability (Doc. # 25) is GRANTED. Defendants' Motion for Summary Judgment (Doc. # 27) is DENIED. This matter shall proceed to jury trial on the issue of damages only.

DATED:  March __17__, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge